# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JONIEL CRUZ-ARROYO,

    Defendant.

CRIMINAL No. 17-191 (DRD)

## REPORT AND RECOMMENDATION

### I. PROCEDURAL BACKGROUND

Pending before the court is a motion to suppress by Joniel Cruz-Arroyo ("Defendant"). ECF No. 38. On March 22, 2017, Defendant was indicted for possession with intent to distribute cocaine base, cocaine, heroin, and marijuana in violation of Title 21, United States Code, Section 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(A); and possession of a machine gun in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(B)(ii). ECF No. 9. On April 10, 2018, Defendant filed the motion pending before the court seeking to suppress "all the evidence found in Mr. Cruz's home." ECF No. 38, at 1. Defendant argues that "Officer González's affidavit contains false statements, omissions and recklessly disregards the truth, without which no probable cause would have been found." Id. The United States of America (hereafter "the government") subsequently filed a response in opposition. ECF No. 44. A suppression hearing was held on October 25, 2018 and November 2, 2018. ECF Nos. 54–55.

## II. FACTUAL BACKGROUND

On February 27, 2017, Puerto Rico Police Officer Gerardo González of the Drugs, Narcotics, and Illegal Weapons Division of Yauco received information that a dark-skinned individual around 5'4" or 5'5" was distributing controlled substances.[1] The individual drove a blue Mitsubishi Mirage with license plate number DIJ939.

Defendant's wife, Ana Arroyo, testified that she and Defendant purchased the blue Mitsubishi Mirage in 2015, although no evidence was presented indicating that the vehicle was ever registered in their names. Ana Arroyo and Noriel Cruz-Arroyo, Defendant's brother, both testified that after Defendant and Ana Arroyo began using it, they realized that the trunk was defective. Specifically, the trunk would open on its own when they were driving the vehicle. According to Noriel Cruz-Arroyo, he sealed the trunk from the inside a couple of weeks after the purchase, such that it could no longer be opened.

Officer González passed the information he had received along to Sergeant José Rodríguez, who assigned the matter to him. Officer González looked for information on the vehicle in the DAVID system, which informed him that it was in the name of Olga Arroyo, with an address of Cuevas Ward, Road 390, Kilometer 4 in Peñuelas. At 4:00 PM or 5:00 PM on March 1, 2017, Sgt. José Rodríguez told Officer González to begin investigating the matter. Sgt. José Rodríguez assigned Officer González a confidential vehicle with tinted windows. Officer González picked up his equipment, including a set of binoculars that belonged to him, and drove to the address in Peñuelas.

---

[1] At the hearing, the word "trigueño" was translated as "dark-skinned." The affidavit of the state search warrant, however, was translated by a different interpreter who used "olive" for the term "trigueño." Compare Hr'g, November 2, 2018, at 10:43 AM with Defense Exhibit A.

The residence in question is made of cement and is beige and brown. It has two stories. Defendant and his family lived on the second story and Noriel Cruz-Arroyo lived on the ground level.[2] The second story has a balcony with a set of stairs on the right side (from the perspective of one facing the residence) that leads to the ground level. The stairs are located on the exterior of the residence. A road that runs parallel to the residence faces it. On the other side of the road is a wooded area with vegetation, and there is vegetation behind the residence as well. From the perspective of one facing the residence, there is another residence to the left.

Officer González arrived at the road where the residence is located at 6:20 PM. As he passed the residence, he noticed a blue Mitsubishi Mirage with an open trunk parked at the entrance of the residence.[3] Officer González continued driving, turned around, and parked at a vantage point from which he could see the vehicle, which was to his right. At approximately 6:23 PM, Officer González observed a dark-skinned individual of 5'4" or 5'5" wearing a blue long-sleeved shirt and jean shorts and holding clear plastic baggies.[4] The individual placed the baggies in the trunk and removed a black gun. The individual pointed the gun to the sky, returned it to the trunk, and closed the trunk, at which point Officer González lost sight of him. Several seconds later, the vehicle left the area. Officer González followed it and noticed that the license plate number was DIJ939.

On March 9, 2017, Sgt. José Rodríguez told Officer González to continue the investigation and assigned him a confidential vehicle. Taking his binoculars, Officer González returned to Cuevas Ward. Officer González arrived at the road where the residence is located at 6:50 AM and chose a vantage point further back from the residence, which was to his right, than that of March

---

[2] The motion to suppress does not raise an allegation about the scope of the warrant or the precise location within the residence where the items at issue were found.
[3] Officer González did not specify whether the vehicle was to his right or to his left at this point.
[4] See n. 1.

3

1, 2017 because the blue Mitsubishi Mirage was not parked in the location that it had been parked in on March 1, 2017. Instead, the vehicle was parked closer to the residence. At 7:07 AM, Officer González saw the same individual emerge from the second story of the residence, wearing a black cap, black shirt, and shorts and holding clear plastic baggies containing marijuana shrubbery. He walked toward the stairs, at which point Officer González lost sight of him. Less than a minute later, Officer González saw him driving away in the blue Mitsubishi Mirage.

Officer González left the area and went to the Drugs, Narcotics, and Illegal Weapons Division of Yauco, where he told Sgt. José Rodríguez what he had observed. Sgt. José Rodríguez instructed Officer González to request search warrants for the residence and the blue Mitsubishi Mirage. A Municipal Court Judge authorized both search warrants.[5]

On March 17, 2017, the search warrant for the residence was executed. Sergeant Francisco Rodríguez was present. He gave a copy of the search warrant to Olga Arroyo. However, the search warrant for the blue Mitsubishi Mirage was not executed because the vehicle was not at the residence on March 17, 2017 and was never located by the police.

## III. ANALYSIS

Officer González surveilled Defendant's residence twice: on March 1, 2017 and on March 9, 2017. A discussion of Defendant's arguments pertaining to each surveillance follows.

### A. The March 1, 2017 Surveillance

#### 1. The Positioning of Officer González and the Blue Mitsubishi Mirage

---

[5] Officer González did not testify—and the affidavit in support of the search warrant is silent—as to whether Defendant was seen with firearms coming in or out of the residence. This does not affect the court's conclusion, however, because Officer González's observations of March 9, 2017 established probable cause that the residence was being used to stash drugs. Due to the multitude of storage spaces in a residence for drugs, officers executing the search warrant had wide latitude to search the residence for drugs, during which time they could have discovered the firearm that was found.

4

Officer González testified that Government Exhibit 3 is a fair and accurate depiction of the location from which he observed criminal activity on March 1, 2017 (although his vehicle was parked closer to the wall to the left than the marked patrol unit depicted in the exhibit). Defendant contends that Officer González's testimony is not credible because he could have been seen by others from that position, including Defendant. An examination of Government Exhibit 3 confirms Officer González's testimony that he could not see the residence from his position due to vegetation. If Officer González could not see the residence from his position, then anyone inside the residence most likely could not see him either. Based on Government Exhibit 4, which Officer González testified is a fair and accurate depiction of his view of the blue Mitsubishi Mirage on March 1, 2017, it appears that Defendant would have been able to see Officer González's vehicle while standing behind the trunk of the blue Mitsubishi Mirage and looking to his right.[6] However, Officer González was driving a confidential vehicle with tinted windows that day, rather than the marked patrol unit depicted in Exhibit 3. Under these circumstances, Officer González's choice of a vantage point did not amount to "crass negligence," as alleged by Defendant. ECF No. 59, at 9. Thus, there is no reason to disbelieve Officer González's testimony as to the location from which he observed criminal activity on March 1, 2017.

Defendant also contends that Officer González's testimony that Government Exhibit 4 is a fair and accurate depiction of the location of the blue Mitsubishi Mirage on March 1, 2017 is not credible because the notion that Defendant would park the vehicle at the entrance of the ramp leading towards the residence is "laughable." Id. at 10. It is certainly strange that Defendant would have parked the vehicle at this location, where he could have been seen by someone on the road. This is particularly true given the Government's claim that Defendant was engaging in illegal

---

[6] The vehicle depicted in Government Exhibit 4 is not the blue Mitsubishi Mirage, but a different vehicle placed where the Mitsubishi Mirage was parked on March 1, 2017.

activity at the time. However, to prevail on a motion to suppress, Defendant must prove by a preponderance of the evidence that Officer González "made a false statement knowingly and intentionally, or with reckless disregard for the truth." United States v. Lanza-Vázquez, 799 F.3d 134, 141 (1st Cir. 2015) (quoting United States v. Tzannos, 460 F.3d 128, 136 (1st Cir. 2006)). It is not beyond the realm of possibility that the vehicle was parked at the entrance of the ramp leading towards the residence on March 1, 2017. Thus, the court cannot conclude that it is more likely than not that Officer González's statement was false.

### 2. Officer González's Observations Involving the Trunk

Defendant argues that Officer González's observations of criminal activity involving the trunk of the blue Mitsubishi Mirage on March 1, 2017 amounted to false statements because according to Ana Arroyo and Noriel Cruz-Arroyo, the trunk could not open on that day. Ana Arroyo and Noriel Cruz-Arroyo's testimony is not credible.

It is plausible that Noriel Cruz-Arroyo sealed the trunk from the inside a couple of weeks after the vehicle's purchase in 2015. However, even assuming that the trunk was sealed in 2015, more than a year elapsed between the date of the sealing and March 1, 2017. Given Ana Arroyo's testimony that the vehicle was the sole means of transportation for a family that included at least one young child, it is difficult to believe that the family never found a solution to the trunk's defects that did not preclude them from using it during that time. Furthermore, the fact that on May 22, 2017, Angel Luis Sánchez Martínez from the Federal Public Defender's Office found that the vehicle's trunk did not work does not tell us anything about since when the trunk has not opened.

Defendant and his family members' conflicting accounts as to the whereabouts of the vehicle on March 17, 2017 did nothing to dispel any doubts about their credibility. Olga Arroyo told Sgt. Francisco Rodríguez that she did not know where the vehicle was because her son used

6

it. Yet, eight days later, she sold the vehicle. Noriel Cruz-Arroyo told Sgt. Francisco Rodríguez that it had been several days since he had last seen the vehicle, even though Olga Arroyo said that her son Joniel, who lived upstairs from Noriel, used it. Defendant told Sgt. Francisco Rodríguez that he had loaned the vehicle, which was the sole means of transportation for his family, to a friend whose address he did not even know. Ana Arroyo, who Sgt. Francisco Rodríguez testified was present when he asked Olga Arroyo about the location of the vehicle, testified that the vehicle was not at the residence on March 17, 2017 because it had mechanical imperfections.

Noriel Cruz-Arroyo testified that Sgt. Francisco Rodríguez did not ask him about the location of the vehicle, and Ana Arroyo testified that she was not present when Sgt. Francisco Rodríguez asked Olga Arroyo about the location of the vehicle. There is no reason to disbelieve Sgt. Francisco Rodríguez's testimony, but even assuming that Noriel Cruz-Arroyo and Ana Arroyo were unaware that the police were looking for the vehicle, at least two members of the Arroyo family were on notice: Olga Arroyo and Defendant. Despite this, on March 25, 2017, merely eight days after the warrant was executed and one day after the search warrant expired, the owner of the vehicle, who claimed not to have any idea where it was and whose son said he had loaned it to someone of unknown whereabouts, sold it.

Ana Arroyo testified that she sold the vehicle, even though it was not registered under her name, because she needed money to support herself after Defendant's arrest. However, Ana Arroyo could still have sold the vehicle if the Arroyo family had contacted the police so that officers could inspect the vehicle prior to March 24, 2017, the day of the expiration of the search warrant. This the family did not do. While the Arroyo family was not obligated to contact the police, their failure to do so renders the circumstances surrounding the vanishing of the vehicle even more suspicious.

In sum, the swift disappearance of the vehicle and its sale merely eight days after Defendant's arrest, where Defendant and at least one family member knew that the police were looking for it, combined with the conflicting accounts as to its whereabouts on March 17, 2017 cast doubt on Defendant's already tenuous claim that the trunk could not open on March 1, 2017.

### 3. Officer González's Trip to the Ponce Courthouse

Defendant argues that Officer González intentionally withheld a trip he took to the Ponce courthouse on March 1, 2017 from the affidavit in support of the search warrant to conceal that the trip precluded him from visiting the residence in Peñuelas that day. ECF No. 59, at 5. This argument was raised for the first time in a post-hearing motion, and not in the original motion to suppress. In any event, it is not tenable. There was evidence presented at the hearing that Officer González obtained a search warrant in an unrelated case at the Ponce courthouse on March 1, 2017. However, no evidence was presented establishing where Officer González was traveling from when he arrived at the courthouse, what time he arrived at the courthouse, how long he remained at the courthouse, where he travelled to afterwards, and when he arrived at his next destination. Without this information, a determination that Officer González's trip to the Ponce courthouse precluded him from visiting the residence in Peñuelas the same day would be based on sheer speculation.

### B.     The March 9, 2017 Surveillance

Defendant contends that the search warrant for Defendant's residence contains false statements regarding the March 9, 2017 surveillance. In his request for the search warrant, Officer González stated that he observed Defendant come down the stairs, go to the blue Mitsubishi Mirage, open the door of the vehicle, get in, and start the engine. However, Officer González testified that he observed Defendant walk toward the stairs, at which point Officer González lost

8

sight of him. Less than a minute later, Officer González saw Defendant driving away in the blue Mitsubishi Mirage. During cross examination, Officer González admitted that he did not see Defendant make his way down the stairs, open the door of the vehicle, get in, and start the engine.

Officer González's statement in his request for the search warrant is inaccurate at best, and his choice of words in the affidavit leaves much to be desired. For guidance, the court turns to the First Circuit's decision in <u>Lanza-Vázquez</u>. There, an agent stated in his affidavit that he observed the defendant "entering" or "exiting" his apartment. 799 F.3d at 141. At the suppression hearing, however, the agent testified that he could not technically see the entrance of the apartment because the door was obstructed by a concrete staircase. <u>Id.</u> The First Circuit held that there were no actual falsehoods in the affidavit, and that the agent was not reckless "in writing 'entering/exiting' instead of the more precise 'I inferred that he entered or exited.'" <u>Id.</u> at 142. The agent, the First Circuit reasoned, "made an obvious and natural inference from his observations." <u>Id.</u>

Here, Officer González observed Defendant walk toward the stairs, at which point Officer González lost sight of him. Less than a minute later, Officer González saw Defendant driving away in the blue Mitsubishi Mirage. Officer González can be deemed to have made "an obvious and natural inference" that Defendant came down the stairs, went to the blue Mitsubishi Mirage, opened the door of the vehicle, got in, and started the engine. <u>Id.</u>

V.  **CONCLUSION**

In sum, although Officer González's testimony as to the positioning of Defendant's vehicle at the entrance of the ramp leading towards the residence on March 1, 2017, as well as Defendant's actions in removing a gun from the trunk, pointing it to the sky, and returning it to the trunk is perhaps questionable, the evidence presented at the hearing is insufficient to conclude that it is false. On the other hand, Officer González's testimony that he observed with binoculars Defendant

9

emerging from the second story of the residence while holding clear plastic baggies containing marijuana on March 9, 2017 is credible. Thus, probable cause was established that the residence was being used to stash drugs.

For the foregoing reasons, it is hereby recommended that the pending motion to suppress (ECF No. 38) be DENIED.[7] The parties have fourteen (14) days to file any objections to this report and recommendation unless otherwise ordered by the court. Failure to file the same within the specified time waives the right to object to this report and recommendation. Fed.R.Civ.P. 72(b)(2); Fed.R.Civ.P. 6(c)(1)(B); D.P.R. Civ. R. 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150–51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED

In San Juan, Puerto Rico, this 14th day of December, 2018.

s/Marcos E. López  
U.S. Magistrate Judge

---

[7] Due to the finding that there were no falsehoods in the affidavit, Defendant's statements will not be suppressed under the fruit of the poisonous tree doctrine. Additionally, there are no allegations that the statements were the product of duress or coercion.