# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff,* v. **JONIEL CRUZ-ARROYO,** *Defendant.* | **CRIMINAL CASE NO. 17-191 (DRD)** |

## OPINION AND ORDER

Pending before the Court is the defendant, Joniel Cruz-Arroyo's *Motion to Suppress [Under Franks v. Delaware]*, Dkt. No. 38. The United States filed its respective response in opposition thereto, Dkt. No. 44. The Court referred this matter for Report and Recommendation to Honorable Magistrate Judge Marcos E. López. *See* Dkt. Nos. 39 and 41. Accordingly, the Magistrate held a *Franks* Hearing on October 25 and November 2, 2018. Then, on December 14, 2018, the Magistrate entered a *Report and Recommendation* regarding the defendant's motion to suppress. *See* Dkt. No. 60. On January 25, 2019, the defendant filed objections to Report and Recommendation. *See* Dkt. No. 65.

The genesis of the instant case goes back to March 17, 2017, wherein the Puerto Rico Police Department (hereinafter, "PRPD") Yauco Narcotics Division executed a search warrant at the home of defendant, Joniel Cruz-Arroyo in the municipality of Peñuelas, Puerto Rico. As a result thereof, the defendant was arrested and charged with a Six-Count Indictment for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1); possession

with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); possession of a machinegun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(B)(ii); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

The search warrant was issued on March 14, 2017 and was based on a sworn affidavit submitted by PRPD Officer Gerardo González-Montalvo, Badge No. 33302. The defendant contends that Officer González' affidavit contained "false statements, omissions and recklessly disregards the truth, without which no probable cause would have been found." *See* Dkt. No. 38. Accordingly, the defendant moves to suppress all the evidence found at his residence pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). *Id.*

The Honorable Magistrate Judge Marcos E. López issued a very thought and developed report and recommendation to deny said motion. *See* Dkt. No. 60.[1] The defendant filed *Objections to Report and Recommendation and Request for De Novo Hearing* that upon a thorough examination of the *Franks* Hearing transcript the Court deems unpersuasive. *See* Dkt. No. 65.[2] Thus, for the reasons set forth below, the Court hereby **ADOPTS** the Magistrate Judge's REPORT AND RECOMMENDATION subject to *de minimis* modifications and **DENIES** defendant's motion to suppress.

---

[1] The Court recognizes a few involuntary clerical errors in the document, to wit, the correct names of several of the witnesses that testified during the Franks Hearing. However, the essence of the Court's analysis and conclusion is accurate, as supported by the transcript. Sometimes Magistrates and District Judges operate with the pressure of having to terminate an Opinion and Order within a small span of time.

[2] On February 26, 2019, upon the review of the defendant's objections to the Magistrate's Report and Recommendation, the Court diligently requested the production of the *Franks* Hearing transcript for its review. *See* Dkt. No. 66. The transcript of the *Franks* Hearing is available at Dkt. Nos. 67 and 68.

## II. REFERRALS TO MAGISTRATE JUDGES

The Court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Local Rule 159; *Matthews v. Weber*, 423 U.S. 261 (1976). Any party may contest the Magistrate Judge's report and recommendation by filing its objections. Fed. R. Crim. P. 59(b); 28 U.S.C. § 636(b)(1). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* "A party that files a timely objection is entitled to a de novo determination of 'those portions of the report or specified proposed findings or recommendations to which specific objection is made.' " *Sylva v. Culebra Dive Shop*, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005)(citing *United States v. Guzman-Batista*, 948 F. Supp. 2d 194, 196 (D.P.R. 2013).

"Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert denied*, 474 U.S. 1021 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *see Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *see also Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a

magistrate's report preserves only those objections that are specified"); *Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). Hence, the standard for review of an objected report and recommendation is *de novo* review of those matters properly objected. *See Borden v. Secretary of H.H.S.,* 836 F.2d at 6.

In order to accept unopposed portions of the Magistrate Judge's report and recommendation, the Court need only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir. 1996) (*en banc*) (extending the deferential "plain error" standard of review to the legal conclusions of a magistrate judge that were not objected to); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982) (*en banc*) (appeal from district court's acceptance of a magistrate judge's findings that were not objected to was reviewed for "plain error"); *see also Nogueras-Cartagena v. United States*, 172 F.Supp. 2d 296, 305 (D.P.R. 2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding Fed. R. Civ. P. 72(b)); *see also Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa. 1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

Thus, the Court shall conduct *de novo* review of the objected portions of the report and recommendation while using the aforementioned "plain error" standard for the portions that have not been objected to.

### III. LEGAL STANDARD FOR A *FRANKS* HEARING

The United States Constitution, Fourth Amendment provides that,

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. Amend. IV. "In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court established that a criminal defendant has a right to a hearing to attack, pursuant to the Fourth Amendment, the statements contained in an affidavit submitted in support of a request for a search warrant. A *Franks* hearing, therefore, 'is primarily a vehicle for challenging a warrant by impeaching the affiant.' ". *United States v. Guzman-Batista*, 948 F.Supp.2d. 194, 197 (D.P.R. 2013)(citing *United States v. Adams,* 305 F.3d 30, 36 n.1 (1st Cir. 2002).

Under *Franks,* "[a] defendant is entitled to a hearing to challenge the truthfulness of statements made in an affidavit supporting a search warrant if he makes a substantial preliminary showing that (1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard of the truth, and (2) the falsehood was necessary to the finding of probable cause. *United States v. Strother,* 318 F.3d 64, 69 (1st Cir. 2003); *see Franks*, 438 U.S. at 171-172, 98 S.Ct. 2674. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156, 98 S. Ct. at 2676.

Herein, the Magistrate found that the defendant was entitled to a *Franks* hearing. *See* Dkt. No. 45. Thus, it is the duty of the Court to focus on the second prong of the *Franks* hearing analysis, namely, requiring from the defendant to establish a substantive showing the falseness of the statements given by the affiant. However, "[t]he district court 'need not hear the live testimony of a witness in order to accept' the credibility determinations of a magistrate judge." *United States v. Guzman-Batista*, 948 F. Supp. 2d 194, 198 (D.P.R. 2013).

Finally, "[w]here, as here, a *Franks* hearing was held and the challenge is targeted at its results, '[w]e bypass the question of whether [the defendant] made the 'substantial preliminary showing' necessary to invoke a *Franks* hearing,' and, instead, 'review de novo the district court's ultimate decision to suppress [or not suppress] the evidence obtained pursuant to the warrant at issue." *United States v. Lanza-Vazquez*, 799 F.3d 134, 141 (1st Cir. 2015)(citing *United States v. Tzannos*, 468 F.3d 128, 135-36 (1st Cir. 2006)).

### IV. FACTUAL AND PROCEDURAL BACKGROUND

As the Court finds that the factual background, as illustrated by the Magistrate Judge in his Report and Recommendation is accurate and consistent with the evidence presented during the *Franks* Hearing, the Court incorporates herein all factual background as discussed by the Magistrate Judge. *See* Dkt. No. 60.

> "On February 27, 2017, Puerto Rico Police Officer Gerardo González of the Drugs, Narcotics and Illegal Weapons Division of Yauco received information that a dark-skinned individual around 5'4" or 5'5" was distributing controlled substances. The individual drove a blue Mitsubishi Mirage with license plate number DIJ939.[3]
>
> Defendant's wife, [Anabelle Alvarado], testified that she and Defendant purchased the blue Mitsubishi Mirage in 2015, although no evidence was

---
[3] *See Transcript of Proceedings, November 2, 2018*, Dkt. No. 68, p. 104, l. 2-7.

6

presented indicating that the vehicle was ever registered in their names.[4] [Anabelle Alvarado] and Noriel Cruz-Arroyo, Defendant's brother, both testified that after Defendant and [Anabelle Alvarado] began using it, they realized that the trunk was defective.[5] Specifically, the trunk would open on its own whey they were driving the vehicle. According to Noriel Cruz-Arroyo, he sealed the trunk from the inside a couple of weeks after the purchase, [] [so] that it could no longer be opened.[6]

Officer González passed the information he had received along to Sergeant José Rodríguez, who assigned the matter to him. Officer González looked for information on the vehicle in the DAVID system, which informed him that it was in the name of Olga Arroyo, with an address of Cuevas Ward, Road 390, Kilometer [0.]4 in Peñuelas.[7] At 4:00 PM or 5:00 PM on March 1, 2017, Sgt. José Rodríguez told Officer González to begin investigating the matter.[8] Sgt. José Rodríguez assigned Officer González a confidential vehicle with tinted windows. Officer González picked up his equipment, including a set of binoculars that belonged to him, and drove to the address in Peñuelas.[9]

The residence in question is made of cement and is beige and brown. It has two stories. Defendant and his family lived on the second story and Noriel Cruz-Arroyo lived on the ground level. The second story has a balcony with a set of stairs on the right side (from the perspective of one facing the residence) that leads to the ground level. The stairs are located on the exterior of the residence. A road that runs parallel to the residence faces it. On the other side of the road is a wooded area with vegetation, and there is vegetation behind the residence as well. From the perspective of one facing the residence, there is another residence to the left.

Officer González arrived at the road where the residence is located at 6:20 PM.[10] As he passed the residence, he noticed a blue Mitsubishi Mirage with an open trunk parked at the entrance of the residence. Officer González continued driving, turned around, and parked at a vantage point from which he could see the vehicle, which was to his right.[11] At approximately 6:23 PM, Officer González observed a dark-skinned individual of 5'4" or 5'5" wearing a blue long-sleeved shirt and jean shorts and holding clear plastic baggies. The individual placed the baggies in the trunk and removed a black gun. The individual pointed the gun to

---

[4] The vehicle was registered under the name of Olga Rosa Esther Arroyo Lugo. *Id.* at 125, l. 24-25.
[5] *See Transcript of Proceedings, October 25, 2019*, Dkt. No. 67, p. 27, l. 4-7; p. 85, l. 1-10.
[6] *Id.* at 86, l. 4-15.
[7] *See Transcript of Proceedings, November 2, 2018*, Dkt. No. 68, p. 105, l. 4-8.
[8] *Id.* at 105, l. 17 to 106 l. 2.
[9] *Id.* at 112, l. 14-18.
[10] *Id.* at 139, l. 24-25 to 140, l. 1.
[11] *Id.* at 112, l. 19-25 to 113, l. 1.

7

the sky, returned it to the trunk, and closed the trunk, at which point Officer González lost sight of him.[12] Several seconds later, the vehicle left the area. Officer González followed it and noticed that the license plate number was DIJ939.[13]

On March 9, 2017, Sgt. José Rodríguez told Officer González to continue the investigation and assigned him a confidential vehicle. Taking his binoculars, Officer González returned to Cuevas Ward.[14] Officer González arrived at the road where the residence is located at 6:50 AM and chose a vantage point further back from the residence, which was to his right, than that of March 1, 2017 because the blue Mitsubishi Mirage was not parked in the location that it had been parked in on March 1, 2017. Instead, the vehicle was parked closer to the residence.[15] At 7:07 AM, Officer González saw the same individual emerge from the second story of the residence, wearing a black cap, black shirt, and shorts and holding clear plastic baggies containing marijuana shrubbery. He walked toward the stairs, at which point Officer González lost sight of him.[16] Less than a minute later, Officer González saw him driving away in the blue Mitsubishi Mirage.[17]

Officer González left the area and went to the Drugs, Narcotics, and Illegal Weapons Division of Yauco, where he told Sgt. José Rodríguez what he had observed. Sgt. José Rodríguez instructed Officer González to request search warrants for the residence and the blue Mitsubishi Mirage.[18] A Municipal Court Judge authorized both search warrants.[19]

On March 17, 2017, the search warrant for the residence was executed.[20] Sergeant Francisco [García Ortiz] was present. He gave a copy of the search warrant to Olga Arroyo.[21] However, the search warrant for the blue Mitsubishi Mirage was not executed because the vehicle was not at the residence on March 17, 2017 and was never located by the police.[22]"

### V. THE DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In essence, the defendant argues that the Magistrate had doubts as to Officer González'

---

[12] *Id.* at 121, l. 2-15.
[13] *Id.* at l. 17-21.
[14] *Id.* at 122, l. 18-25 to 123, l. 2.
[15] *Id.* at 123, l. 3-8.
[16] *Id.* at 124, l. 9-21.
[17] *Id.* at 125, l. 1-5.
[18] *Id.* at 125, l. 17-25 to 126, l. 1-2.
[19] *Id.* at 126, l. 3-13.
[20] *Id.* at 170, l. 25 to 171, l. 5.
[21] *Id.* at 171, l. 24-25 to 172, l. 1-4.
[22] *Id.* at 172, l. 22-25 to 173, l. 3.

alleged surveillances. To wit, the Magistrate's determination that probable cause was established by the March 9, 2017 surveillance as opposed to the March 1, 2017 surveillance. Moreover, the defendant contends that the Magistrate's finding as to the March 9, 2017 surveillance, "is completely wrong and based on a false statement." Dkt. No. 65 at 15. According to the defendant, the Magistrate "made a factual finding that is materially different from the facts in the search warrant" *Id.*, namely, "Officer González state[s] in the search warrant that he observed the Defendant holding the plastic bag once he had already gone down the stairs and was on the ground level." *Id.* However, Officer González' testimony is that he did not see the defendant on the first floor as vegetation blocked his view. Accordingly, the defendant alleges that the Officer's testimony is inconsistent with the contents of the search warrant. The English translation of the search warrant, as produced by the defendant, provides in its pertinent part that,

> "At about 7:07 A.M. approximately he observed that from the interior of the residence through the main door came out an olive complexioned individual 5'5" tall approximately, dressed in a T-shirt and black colored cap, short jean pants, this being the same one he observed during the previous surveillance doing something in the Mitsubishi make vehicle, model Mirage, color blue, two doors. He came down the stairs that grant access to the same and went to the Mitsubishi make vehicle, model Mirage, blue color, two doors, tag DIJ-939. **He observed that he picked up in his left hand** several transparent Ziploc type plastic bags containing in their interior several plastic bags with apparent marijuana cuttings, he opened the door of the same and got in, he started it and started moving going in a direction towards the town of Peñuelas . . ."

Dkt. No. 61-1. (Emphasis ours). It is the defendant's position that "[w]hen excising the false statements from the search warrant . . . the search warrant is devoid of sufficient facts to establish probable cause to search defendant's residence." *Id.*

Critical to the Court's determination is the fact that the English translation of the search warrant is inaccurate as to Officer González' observation of the Ziploc plastic bags with apparent

9

marijuana cuttings during the March 9, 2017 surveillance. Upon a careful review of the search warrant, the Court finds that the proper translation of said part is, "[h]e observed **that he was carrying in his left hand** several transparent Ziploc type plastic bags containing in their interior several plastic bags with apparent marijuana cuttings . . ."[23]

As there are several objections raised by the defendant to the Magistrate's Report and Recommendation, the Court will address them *in seriatim*.

a. ***The Defendant's wife is named Ana Arroyo:***

The Report and Recommendation incorrectly refers to the defendant's wife as Ana Arroyo, when in reality her name is Anabelle Alvarado. The Court recognizes this involuntary clerical error. However, this clerical error does not alter the essence of the Court's analysis and conclusion.

b. ***On March 1, 2017, as Officer Gonzalez passed the Defendant's residence, he noticed a blue Mitsubishi Mirage with an open trunk parked at the entrance of the residence; he observed the Defendant place clear plastic baggies in the trunk of the blue Mitsubishi Mirage, and remove a black gun from it; and he observed the Defendant point the gun to the sky, return it to the trunk, and closed the trunk:***

The defendant submits that the Magistrate committed clear error as the defendant presented ample evidence during the *Franks* Hearing that the trunk of the Blue Mitsubishi Mirage was sealed and could not be opened on March 1, 2017, when Officer González made his surveillance. The evidence presented by the defendant consisted in the testimony of his wife, Anabelle Alvarado and his brother, Noriel Cruz Arroyo, who testified that upon acquiring the vehicle in 2015, the trunk would open on its own when driving the vehicle. Shortly thereafter,

---

[23] The original version of the Search Warrant, in its pertinent part, reads as follows, "[o]bservó que llevaba en su mano izquierda varias bolsas plásticas, tipo Ziploc transparente conteniendo en su interior varias bolsitas plásticas con aparente picadura de marihuana . . ." Dkt. No. 61-1 at 2.

Noriel Cruz-Arroyo sealed the trunk to avoid it from opening on its own. Asides from the defendant's witnesses' testimony, the defense submitted a video of the vehicle demonstrating that on May 22, 2017 the trunk could not be opened. *See* Defendant's Exhibit N, Dkt. No. 61. According to the defendant, the government failed to present evidence to rebut the defendant's evidence as to the sealed trunk.

Whereas, the Magistrate did not find Anabelle Alvarado nor Noriel Cruz-Arroyo's testimonies credible. He further concluded that, "[e]ven assuming that the trunk was sealed in 2015, more than a year elapsed between the date of the sealing and March 1, 2017." Dkt. No. 60, p. 6. Moreover, the Magistrate found that "[g]iven [Anabelle Alvarado's] testimony that the vehicle was the sole means of transportation for a family that included at least one young child, it is difficult to believe that the family never found a solution to the trunk's defects that did not preclude them from using it during that time." *Id.* The truth of the matter is that the Mitsubishi Mirage was not at the residence on March 17, 2017. According to Ms. Alvarado, who was home when the search warrant was served, the vehicle was not at the house "because it had mechanical imperfections."[24]

The Court finds that the inference made by the Magistrate is adequate and reasonable. Demonstrating that the trunk could not be opened on May 22, 2017 does not prove that the trunk was sealed almost three (3) months earlier, on March 1, 2017. On the other hand, as the vehicle's search warrant was served on the defendant's mother, Olga Arroyo[25], it is reasonable

---

[24] *See Transcript of Proceedings, October 25, 2019*, Dkt. No. 67, p. 43, l. 19-23.
[25] The Court finds that all references made by the Magistrate as to what Ms. Olga Arroyo said when receiving the search warrant cannot be considered as they constitute hearsay. Ms. Arroyo was not called as a witness during the *Franks* Hearing. Accordingly, the Court will only consider the fact the Sgt. Francisco García-Ortiz served the search warrant of the car to Olga Arroyo, as owner of the vehicle and, of the residence as the owner.

to conclude that she was fully aware that the PRPD was looking for the vehicle, as well as the defendant. However, within eight (8) days of the defendant's arrest, Ms. Alvarado, who was not the owner of the vehicle, surprisingly sold the Mitsubishi Mirage. Ms. Alvarado alleges that the sale was due to the fact that she was pregnant and "needed the money to be able to afford things related to the baby."[26] However, none of the Arroyo family members contacted the PRPD to inspect the vehicle prior to March 24, 2017, the date of the expiration of the search warrant. The Court finds that the selling of the vehicle is fatal to the defendant's position as to this issue. As correctly asserted by the Magistrate, "[w]hile the Arroyo family was not obligated to contact the police, their failure to do so renders the circumstances surrounding the vanishing of the vehicle even more suspicious." Dkt. No. 60, p. 7.

As consistently held by the Supreme Court, "a district judge need not hear the live testimony of a witness in order to accept the credibility determination of a magistrate judge." *United States v. Hernandez-Rodriguez*, 443 F.3d 138, 147–48 (1st Cir. 2006)(citing *United States v. Raddatz*, 447 U.S. 667, 680–81, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). However, "[a] district judge may not reject a magistrate's findings as to the credibility of a witness without hearing the witness testify first-hand." *Id.* at 148. "The Magistrate Judge made credibility determinations regarding the testimonies of Defendant['s] witnesses and it is well settled law that when findings are based on determinations regarding the credibility of witnesses, great deference is given to the trial court's findings; 'for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.' *United States v. Andujar-Ortiz*, 575 F. Supp. 2d 373, 378 (D.P.R. 2008) (citing *Anderson v. City of*

---

[26] *Id.* at 46, l. 13-21.

*Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S. Ct. 1504, 1512, 84 L. Ed. 2d 518 (1985)).

Finally, as to the location of the Mitsubishi Mirage during Officer González' surveillance on March 1, 2017, the Court agrees with the Magistrate that it is uncommon for a vehicle to be parked near the road, as other people could have seen what he was doing, particularly since the defendant was allegedly engaging in an illegal activity. However, in order to prevail as to this issue, defendant "must show by a preponderance of the evidence that '[] [Officer González] in fact made a false statement knowingly and intentionally, or with reckless disregard for the truth,'" *United States v. Lanza-Vazquez*, 799 F.3d 134, 141 (1st Cir. 2015). The Court agrees with the Magistrate's determination that "[i]t is not beyond the realm of possibility that the vehicle was parked at the entrance of the ramp leading towards the residence on March 1, 2017."

   c. ***On March 1, 2017, Officer Gonzalez observed the blue Mitsubishi Mirage leave the area of the Defendant's residence and followed it, noticing that the license plate number was DIJ939:***

The defendant contends that this finding is wrong as Officer González never testified that during the March 1, 2017 surveillance, he observed the defendant's vehicle leave the area nor followed the vehicle then noticing the license plate number. Although the Court recognizes that this information is not included in the search warrant, the defendant is mistaken as to Officer González' testimony. The Court briefly clarifies.

Officer González testified that after he saw the defendant pointing a black gun to the sky, puts it in the trunk and closes the trunk, "[he] waited several seconds and [] decided to leave the area so as to not face any suspicion and when [he] went, [he] traveled behind the vehicle, [he] noticed its license plate, which was DIJ-939, which was the same license plate that [he'd] been given in the information." Dkt. No. 68, p. 23, l. 11-21. Accordingly, the defendant's objection is

baseless.

   d. *On March 9, 2017, Officer chose a vantage point further back from the residence than that of March 1, 2017, because the blue Mitsubishi Mirage was not parked in the location that it had been parked in on March 1, 2017:*

The defendant contends that this factual finding is not supported by evidence, the search warrant or Officer González' testimony. Defendant correctly asserts that there is no mention of the vantage point on the March 9, 2017 surveillance. However, the defendant is mistaken once again as to Officer González' testimony. During his testimony, Officer González was inquired as to his position during his March 9, 2017 surveillance, as follows:

> "Q. What happened?
> A. I arrived to the location. I looked for a strategic point that wasn't the same one as March 1, 2017 because when I went by, the vehicle wasn't parked in the same location it had been parked on March 1, 2017. It was parked further and closer to the home.
> THE MAGISTRATE: To which vehicle are you talking about?
> THE WITNESS: The 2-door blue Mitsubishi Mirage which I saw on March 1, 2017.
> BY MR. REYES:
> Q. So, what surveillance position did you choose this time on March 9, 2017?
> A. <u>Further back than March 1, 2017</u>."

Dkt. No. 68, p. 123, l. 3-16. (Emphasis ours). Accordingly, the defendant's objection as to Officer González' vantage position during the March 9, 2017 is unmeritorious.

   e. *On March 9, 2017, Officer González observed the Defendant emerge from the second story of the residence holding clear plastic baggies containing marijuana shrubbery; he observed the Defendant walk toward the stairs, at which point he lost sight of him, and less than a minute later, he saw the Defendant driving away in the blue Mitsubishi Mirage:*

The defendant contends that when the Magistrate made the finding that Officer González saw the defendant emerge from the second story of the residence holding clear plastic baggies containing marijuana shrubbery, he made an irreparable harm that requires the Court's intervention. The Court strongly disagrees. The English translation of the search warrant, as

14

produced by the defendant, provides in its pertinent part that,

> "At about 7:07 A.M. approximately he observed that from the interior of the residence through the main door came out an olive complexioned individual 5'5" tall approximately, dressed in a T-shirt and black colored cap, short jean pants, this being the same one he observed during the previous surveillance doing something in the Mitsubishi make vehicle, model Mirage, color blue, two doors. He came down the stairs than grant access to the same and went to the Mitsubishi make vehicle, model Mirage, blue color, two doors, tag DIJ-939. **He observed that he picked up in his left hand** several transparent Ziploc type plastic bags containing in their interior several plastic bags with apparent marijuana cuttings, he opened the door of the same and got in, he started it and started moving going in a direction towards the town of Peñuelas . . ."

Dkt. No. 61-1. (Emphasis ours). It is the defendant's position that "[w]hen excising the false statements from the search warrant . . . the search warrant is devoid of sufficient facts to establish probable cause to search Defendant's residence." *Id.*

Critical to the Court's determination is the fact that the English translation of the search warrant is inaccurate as to Officer González' observation of the Ziploc plastic bags with apparent marijuana cuttings during the March 9, 2017 surveillance. Upon a careful review of the search warrant, the Court finds that the proper translation of said part is, "[h]e observed **that he was carrying in his left hand** several transparent Ziploc type plastic bags containing in their interior several plastic bags with apparent marijuana cuttings . . ."[27] There is an essential difference between stating that a person observed another picking up something as opposed to carrying something.

In order for the defendant to succeed in the motion to suppress, the defendant "must show by a preponderance of the evidence that '[Officer González] in fact made a false statement

---

[27] The original version of the Search Warrant, in its pertinent part, reads as follows, "[o]bservó que llevaba en su mano izquierda varias bolsas plásticas, tipo Ziploc transparente conteniendo en su interior varias bolsitas plásticas con aparente picadura de marihuana . . ." Dkt. No. 61-1 at 2.

knowingly and intentionally, or with reckless disregard for the truth,' " *Lanza-Vazquez*, 799 F.3d at 141). During the *Franks* Hearing, Officer González testified that,

> "Q. What else did you see?
> A. He came out of the home and he had in his hands several plastic bags which contained inside what appeared to be marijuana shrubbery and he walked towards the stairs area where I lost sight of him.
> Q. What was the next thing you saw?
> A. After this I saw the individual that I saw coming out of the home with the black T-shirt and the black cap, was coming out of the blue Mitsubishi Mirage.
> Q. Approximately how much time transpired from the time that you lost sight of this individual as he was going down the stairs until the time that you saw the individual drive away in the Mitsubishi Mirage?
> A. Less than a minute.
> Q. So, what did you do after you saw Mr. Cruz Arroyo drive away in the Mitsubishi Mirage on March 9, 2017?
> A. He went toward the town of Peñuelas and I followed him and he arrived at Caracoles 3 Ward and he gave the individual who had a black T-shirt that was dark skinned, the clear plastic bags that I saw that he took from the home and he transported in the vehicle."

Dkt. No. 68, pp. 124, l. 18-25 to 125, l. 1-12.

The Court agrees with the Magistrate's determination that "Officer González' [.sic] statement in his request for the search warrant is inaccurate at best, and his choice of words in the affidavit leaves much to be desired." Dkt. No. 60, p. 9. The Magistrate correctly relies on *Lanza-Vázquez*, 799 F.3d at 141, wherein, the agent stated in the affidavit that he observed the defendant "entering" or "exiting" the apartment. Whereas, during the *Franks* Hearing, the officer testified that "he could not technically see the entrance to [the defendant's] apartment because the door was obstructed by a concrete staircase." The Court finds that Officer González' testimony was truthful and was nothing more than an "obvious and natural inference" from his surveillance. *Id.* at 142. More importantly, the result of the March 9, 2017 surveillance established the probable cause to request a search warrant as to the residence. Thus, no *Franks*'

violation has occurred as to this issue.

f. *A Municipal Court Judge authorized a search warrant for the blue Mitsubishi Mirage; however, it was not executed because the vehicle was not at the residence on March 17, 2017, and was never located by the police:*

The defendant is requesting the Court to discard any factual finding related to the search warrant that was authorized for the blue Mitsubishi Mirage. To begin with, the existence of the search warrant is in question as the government never produced it. Defendant further contends that "assuming the document existed, its execution or lack thereof is irrelevant pursuant to Franks." Dkt. No. 65, p. 8. According to the defendant, he is only seeking a determination as to search warrant executed on his residence contains false statements, omissions or recklessly disregards the truth. More importantly, the defendant asserts that the Magistrate made said findings "to sustain the credibility determination regarding the defense witnesses." *Id.*

The Court thinks otherwise. During the *Franks* Hearing, the defendant presented testimonial evidence as to the whereabouts of the Mitsubishi Mirage, the reasons behind the unavailability of the vehicle when the warrant was being executed on March 17, 2017 and, the reasoning behind selling of the automobile eight (8) days thereafter. The Magistrate made an accurate finding as to this issue.

g. *On March 17, 2017, Sergeant Francisco García-Ortiz gave Olga Arroyo a copy of the search warrant for Defendant's residence:*

The Court begins by noting that the Report and Recommendation incorrectly refers to the sergeant who executed the search warrant as Sgt. Francisco Rodríguez, when in reality his name is Francisco García-Ortiz. The Court recognizes this involuntary clerical error. However, the essence of the Magistrate's analysis and conclusion is adequate. The defendant contends that since Sgt. García-Ortiz' testimony "does not pertain to any of the observations contained in the

search warrant . . ." thus, is "out of the scope of the Franks hearing." Dkt. No. 68, p. 8. The Court thinks otherwise.

Sergeant García-Ortiz was called as a witness by the Government to confirm the proper execution of the search warrant in the defendant's residence. During his testimony, Sgt. García-Ortiz stated that on March 17, 2017 he gave a copy of the search warrant to Ms. Olga Arroyo as she was the person who identified herself as the owner of the property.[28] Accordingly, the Court finds the defendant's objection baseless.

### h. *Factual Finding Omitted: On March 1, 2017, Officer González travelled to the Ponce Courthouse to obtain a search warrant in an unrelated case:*

The defendant argues that the Magistrate omitted a very important factual finding that would have made impossible for Officer González to make his March 1, 2017 surveillance upon the defendant's residence. According to the defendant, omitting said information from the affidavit subject to the search warrant, is significant under *Franks*. The fact that Officer González further omitted this information during his direct examination along with his lack of note taking and any other mean to preserve the facts of said day, "further casts doubts regarding his testimony." Dkt. No. 65, p. 9.

In reality, the evidence submitted as to this particular issue was insufficient. As correctly explained by the Magistrate, "no evidence was presented establishing where Officer González was traveling from when he arrived at the courthouse, what time he arrived at the courthouse, how long he remained at the courthouse, where he travelled to afterwards, and when he arrived at his next destination." Dkt. No. 60, p. 8. Most critical, the search warrant obtained at the Ponce

---

[28] *See Transcript of the Proceedings, November 2, 2018*, Dkt. No. 68, pp. 171, l. 21-25 to 172, l. 1-6.

18

courthouse is from an unrelated case. Forcing the Court to conclude that Officer González' trip precluded him from making his surveillance on the defendant's residence during the same day is pure speculation. Thus, the Court finds that the instant factual finding was irrelevant and unrelated to the instant controversy.

### VI. CONCLUSION

The Court finds that the defendant failed to establish a clear error as to the facts in the Magistrate's Report and Recommendation as to the motion to suppress. Moreover, the defendant has failed to make a substantive showing of the falseness of the statements given by Officer González, that said statements were knowingly and intentionally false, or made with reckless disregard of the truth and, that the falsehood was necessary to the finding of probable cause. Thus, no *Franks* violation has occurred herein.

In the present case, the Magistrate determined, after evaluating the testimonies of Defendant's witnesses, including their responsiveness and their demeanor on the stand, that their testimonies were not credible. The Court finds that the Magistrate's recommendations are adequately based on the witnesses' testimonies and supporting documentation, and no clear error has been found as to his findings. Accordingly, the Court hereby **ADOPTS** the Magistrate Judge's **REPORT AND RECOMMENDATION**, subject to *de minimis* modifications set forth in the instant opinion as to clerical errors[29] and subsection b[30], and **DENIES** the defendant's *Motion to Suppress [under Franks v. Delaware]* (Dkt. No. 38).

---

[29] To wit, the name of the defendant's wife, Anabelle Alvarado, and the name of the sergeant who executed the search warrant, Sgt. Francisco García Ortiz.
[30] Excluding hearsay statements by Ms. Olga Arroyo, who was not called as a witness during the *Franks* Hearing. Said exclusion does not change the Court's ruling.

The Court finalizes by noting that defendant's allegations as to the Magistrate's serious confusion and lack of attention during the *Franks* hearing are unmeritorious and unfortunate. All the factual findings recommended by the Magistrate were found in the Transcript of the *Franks* Hearing and supporting evidence. Clerical errors do not constitute clear error. The essence of the Report and Recommendation was accurate and pursuant to the applicable law.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on this 19th day of March, 2019.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge